In re Bernard A. ROEMMELE, Debtor.

Philip J. Von Kahle, Successor Receiver on behalf of Professional Resources Systems International, Inc., a/k/a PRSI, Inc., Plaintiff,

v.

Bernard A. Roemmele, Defendant.

Bankruptcy No. 01–32044–ELF.
Adversary No. 01–1252.

United States Bankruptcy Court, E.D. Pennsylvania.

March 14, 2012.

---

David A. Scholl, Law Office of David A. Scholl, Philadelphia, PA, for Debtor.

Bernard A. Roemmele, pro se.

## MEMORANDUM

ERIC L. FRANK, Bankruptcy Judge.

### I. INTRODUCTION

In this more than decade old adversary proceeding, Plaintiff Philip J. Von Kahle, the court-appointed Receiver (the "Receiver") for Professional Resources Systems International, Inc. ("PRSI") [1] seeks a de-

---

1. Mr. Von Kahle is the successor to the original receiver, Louis B. Freeman. In this Memorandum, I will refer to them interchangeably as "the Receiver."

termination that the debt of Defendant Bernard Roemmele ("the Debtor") is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

On October 11, 2011, I ruled on the parties' cross-motions for summary judgment. In the accompanying opinion, I explained that the Receiver had not come forward with evidence supporting certain essential elements of his § 523(a)(4) claim, thereby failing to meet the evidentiary burden under Fed. R. Bankr.P. 7056 and Fed.R.Civ.P. 56 borne by a responding party who bears the burden of proof on the claim at issue. Consequently, I entered summary judgment in favor of the Debtor and against the Receiver. *See In re Roemmele*, 2011 WL 4804833 (Bankr. E.D.Pa. Oct. 11, 2011).

Presently before the court is the Receiver's motion for reconsideration ("the Motion for Reconsideration") of the October 11, 2011 order insofar as it granted the Debtor's motion for summary judgment ("the Debtor's 2008 MSJ").[2] The Receiver's primary contention is that the court failed to afford appropriate weight to the Debtor's criminal conviction and thereby erred in allowing the discharge of a debt to an individual who is not an "honest but unfortunate" debtor.[3] The Debtor contests the Motion.

I will deny the Receiver's Reconsideration Motion because it is "too little, too late."

## II. BACKGROUND

The prior opinion set out the factual and lengthy procedural background in this adversary proceeding. The complete details need not be repeated here. The discussion is aided, however, by a review of certain parts of the procedural history.

### A. The Debtor's Bankruptcy and Adversary Proceeding

The Receiver filed this adversary proceeding on December 26, 2001, requesting both a determination of dischargeability under 11 U.S.C. § 523(a) and the denial of the Debtor's discharge under 11 U.S.C. § 727(a). In general terms, the Receiver asserted that the Debtor, acting in his capacity as Chief Executive Officer of CitX Corporation ("CitX") and through a series of contracts between CitX and PRSI, fraudulently induced PRSI to pay CitX $700,000.00 or otherwise misappropriated that sum.

The parties filed their first cross-motions for summary judgment in April 2004 (Doc. # s 110 and 114). On February 17, 2005, the court denied the Receiver's request for summary judgment in its entirety and granted the Debtor's request in part, dismissing one (1) of the Receiver's § 523(a) claims. Through the same order, by agreement of the parties, the court dismissed two (2) of the Receiver's § 727(a) claims. (Doc. # 156). Shortly thereafter, on March 30, 2005, at the parties' joint request, the court stayed this adversary proceeding pending resolution of the Debtor's criminal trial in the United States District Court for the Southern District of Florida ("the Florida Criminal Proceeding"). (Doc. # 168). In September 2006, after a status hearing,[4] this court issued a new pretrial order, which effec-

---

2. The Motion for Reconsideration only asks for reconsideration of the grant of summary judgment to the Debtor. The Receiver does not assert that he is entitled to judgment on his cross-motion. He seeks only the opportunity to take this matter to trial.

3. The Debtor is currently incarcerated and acting *pro se*. Prior to February 7, 2007, he was represented by counsel.

4. Up until February 14, 2006, the bankruptcy case and the adversary proceeding were assigned to the Honorable Kevin J. Carey. On

tively put the adversary proceeding back on track.

On January 12, 2007, the Receiver filed a second motion for summary judgment, to which the Debtor responded ("the Receiver's 2007 MSJ"). (Doc. #'s 184 and 209). After a hearing on the Receiver's 2007 MSJ and consideration of two (2) letters the Receiver sent to the court (Doc. #s 218 and 221), the court entered an Order on August 27, 2007:

(1) dismissing the remaining § 727 claims at the Receiver's request (leaving the § 523(a)(4) claim as the last remaining claim in the adversary proceeding); and

(2) staying the adversary proceeding pending the outcome of the Debtor's appeal of his conviction in the Florida Criminal Proceeding.

(Doc. # 222).

Notably, the Receiver sought a stay of the proceedings in August 2007 because he discovered that the Debtor had been convicted of certain crimes (discussed below) in the U.S. District Court for the Southern District of Florida on August 15, 2006 (the "Florida Criminal Proceeding"). (Doc. # 221). The criminal conviction resulted in the entry of an order on January 26, 2007 requiring the Debtor to pay in excess of $14 million in criminal restitution and the forfeiture of $480,000.00 in assets. *See U.S. v. Roemmele*, 2011 WL 4625348, at *1 (S.D.Fla. Oct. 3, 2011). The Debtor appealed his conviction. In requesting the stay, the Receiver suggested to the court that if the criminal conviction and the restitution/forfeiture order were affirmed on

appeal, he was unlikely to continue pursuing his § 523(a)(4) claim in this court.[5]

On July 31, 2008, notwithstanding the August 27, 2007 stay order, the Debtor filed his second motion for summary judgment, (*i.e.*, the Debtor's 2008 MSJ, subsequently granted by the order that is the subject of the Receiver's Motion for Reconsideration). (Doc. # 227). The court then entered an order holding the Debtor's 2008 MSJ in suspense until the existing stay was lifted. (Doc. # 230).

On March 28, 2011, upon motion of the Debtor, the court terminated the stay of this adversary proceeding. The March 28, 2011 Order also established a schedule to permit the parties to supplement their pending motions (*i.e.*, the Receiver's 2007 MSJ and the Debtor's 2008 MSJ) and set a briefing schedule, for what was now, the second round of cross-motions for summary judgment ("the Second Cross–Motions").

On October 11, 2011, the court granted the Debtor's 2008 MSJ and denied the Receiver's 2007 MSJ, entering final judgment in favor of the Debtor.

## B. The Debtor's Criminal Conviction and Appeals

One final piece of background information requires mention. Because the Motion focuses on the Debtor's criminal conviction, it is helpful to review briefly some of the history of the Florida Criminal Proceeding.

The Debtor's August 15, 2006 conviction in the Florida Criminal Proceeding was for:

that date, the case and adversary proceeding were reassigned to the undersigned judge.

**5.** This court's Order entered on August 27, 2007 stated: "this court [interprets] the Plaintiff's letter ... to mean that if the Defendant's criminal conviction is upheld on appeal and the criminal restitution and forfeiture orders become final, the Plaintiff agrees to the dis-

missal of his claims under § 523(a) with prejudice. The Order also stated that the court found "reasonable the Plaintiff's belief that successful prosecution of this litigation would likely only duplicate the effect of the criminal restitution and forfeiture orders...." (Doc. # 222).

(1) conspiracy to commit RICO;

(2) conspiracy to commit mail and/or wire fraud;

(3) conspiracy to commit money laundering; and

(4) stock fraud.

(Exh. J to Doc. # 184); *see also U.S. v. Roemmele,* 2011 WL 4625357, at *1.

The Debtor's conviction was affirmed on appeal by the Eleventh Circuit, although his sentence was vacated and remanded. *U.S. v. Hein,* 395 Fed.Appx. 652 (11th Cir.2010). (the "11th Cir. Decision"). However, the Debtor's appeal is not final.[6] For some reason, the Debtor has a second appeal of his conviction pending before the 11th Circuit, as well as a pending petition for a writ of certiorari concerning the 11th Cir. Decision. (*See* Letter from Debtor, Doc. # 262).[7] Further, for an unknown reason, on July 22, 2011, the 11th Cir. recalled its mandate. *See U.S. v. Roemmele,* 2011 WL 4625348, at *1.

## III. DISCUSSION

### A. The October 11, 2011 Decision

After reviewing the pleadings and evidentiary record submitted by the parties in connection with the Second Cross–Motions, I concluded that the Debtor was entitled to summary judgment because the Receiver had not met his burden under § 523(a)(4) with respect to any of the three "prongs" of § 523(a)(4): (a) fraud or defalcation while acting in a fiduciary capacity; (b) embezzlement and (c) larceny. I reached this result because:

(1) the Receiver did not produce or reference any evidence that established an express or technical trust between the Debtor or CitX Corporation and PRSI under the "fiduciary prong" of § 523(a)(4);

(2) the Receiver failed to meet his burden with regard to two (2) of the required elements for finding embezzlement under § 523(a)(4): misappropriation and fraudulent intent; and,

(3) the findings in a prior state court judgment against the Debtor[8] through application of collateral estoppel did not establish the elements of larceny under § 523(a)(4).

### B. Legal Standard

■ Federal Rule 59(e), made applicable to this proceeding by Bankruptcy Rule

---

6. I note that my decision to terminate the stay of this adversary proceeding in March 2011 resulted, in large part, from the fact more than three (3) years had passed since the Debtor's conviction and that it was apparent—as a result of the ongoing appellate process and the Court of Appeals' order directing the district court to re-sentence the Debtor, as well as the continued availability of Supreme Court review—that a substantial additional amount of time would pass before the Debtor's conviction would become final. When I issued the stay, in August 2008, I did not expect that, in March 2011 the criminal conviction would not be final, with no clear end in sight.

7. The Supreme Court initially denied *certiorari* regarding the 11th Cir. Decision, but, as a result of subsequent order entered by the Court, it appears that Supreme Court review remains open to the Debtor.

8. As discussed in my prior opinion, in 2000, the Pennsylvania Court of Common Pleas, Bucks County (the "CP Court") enjoined the Debtor and CitX from using PRSI's customer list. In doing so, the CP Court found, *inter alia,* that CitX wrongfully misappropriated PRSI's protected customer information and refused to return this information to the Receiver. *See Roemmele,* 2011 WL 4804833, at *1–2. In pressing his 2007 MSJ and contesting the Debtor's 2008 MSJ, the Receiver relied heavily on the CP Court's findings, expecting that his burden would be met through facts established by collateral estoppel.

9023, allows a judgment to be altered or amended only if the moving party shows at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Blystone v. Horn,* 664 F.3d 397, 415 (3d Cir.2011) (emphasis removed); *accord Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999); *Intermec Tech. Corp. v. Palm, Inc.,* 2011 WL 6356619, at *2 (D.Del. Dec. 19, 2011) (citing *Max's Seafood* ).

It is well established that a litigant moving for reconsideration must overcome a "high burden" in meeting the above standard. *ABS Brokerage Servs., LLC v. Penson Fin. Servs., Inc.,* 2010 WL 3257992, at *5 (D.N.J. Aug. 16, 2010); *see also Blystone,* 664 F.3d at 404 ("the scope of a motion for reconsideration ... is extremely limited"); *Fanelli v. Continental Cas. Co.,* 2006 WL 3387187, at *2 (M.D.Pa. Nov. 21, 2006) ("reconsideration of judgment is an extraordinary remedy, and such motions should be granted sparingly") (citation omitted); *Conway v. A.I. duPont Hosp. for Children,* 2009 WL 1492178, at *2 (E.D.Pa. May 26, 2009) ("Parties may not use rule 59(e) motions as a vehicle to ask ... courts to rethink what they have already thought through—rightly or wrongly") (internal citations and quotations omitted); *In re Kuhar,* 2007 WL 2245912, *2 (Bankr.E.D.Pa. Aug. 1, 2007) ("courts should grant such motions sparingly because of their strong interest in finality of judgment") (citations omitted).

The Receiver seeks reconsideration pursuant to the third prong of the Rule 59(e) test. He asserts that the court has "crafted a decision that is manifestly unjust."

(Receiver's Motion for Reconsideration at 3).

 There is no judicial consensus regarding the meaning of the term "manifestly unjust" as it pertains to a Rule 59(e) motion, but several courts have applied the Black's Law Dictionary definition, which states that "manifest injustice" is "an error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds." *Conway,* 2009 WL 1492178, at *6 n. 8 (citation omitted); *accord Brown v. Zickefoose,* 2011 WL 5007829, at *2 n. 3 (D.N.J. Oct. 18, 2011); *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego,* 2011 WL 4691933, at *3 (D.Kan. Oct. 6, 2011). A party may only be granted reconsideration based on manifest injustice if the error is "apparent to the point of being indisputable." *Tri-State Truck Ins.,* 2011 WL 4691933, at *3 (quoting *Shirlington Limousine Transp. Inc. v. U.S.* 78 Fed. Cl. 27, 31 (2007)). In order for a court to reconsider a decision due to 'manifest injustice,' the record presented must be "so patently unfair and tainted that the error is manifestly clear to all who view [it.]" *Conway,* 2009 WL 1492178, at *6 n. 8 (citation omitted).

## C. The Receiver's Asserted Grounds Under the "Manifest Injustice" Standard

The Receiver presents three (3) grounds for reconsideration of the October 11, 2011 Order based on "manifest injustice:"

(1) Due to the Debtor's status as a convicted criminal and lack of honesty, any determination that his debt to PRSI's Receiver is dischargeable would be manifestly unjust.

(2) The court committed an error of law by failing to accord appropriate evi-

dentiary weight to the Debtor's criminal conviction.

(3) The Receiver has been denied an adequate opportunity to conduct the discovery necessary to defeat the Debtor's 2008 MSJ.

None of these arguments has merit.

### 1.

The Receiver appears to base his first argument on either of two (2) related legal premises: (a) that the subject debt should be determined nondischargeable simply because the Debtor is a convicted criminal; or (b) that the subject debt should be determined nondischargeable because the Debtor is not an "honest debtor." In the context of this § 523(a)(4) proceeding, both premises are incorrect.

■ Starting with the asserted legal significance of the Debtor's criminal conviction, the Receiver cites no authority—and my research did not uncover any—supporting his contention that anyone who has committed a crime is *per se* dishonest within the meaning of the Bankruptcy Code or is ineligible to receive a bankruptcy discharge. This is apparent from consideration of those provisions of the Bankruptcy Code that relate to criminal convictions and an individual's access to a bankruptcy discharge.

Nothing in 11 U.S.C. § 109, which governs eligibility to be a debtor generally, restricts a convicted criminal's access to the bankruptcy system. Similarly, nothing in 11 U.S.C. § 727(a) bars a debtor from receiving a discharge based solely on a criminal conviction. Nor does any provision of 11 U.S.C. § 523(a) or § 1328(a) render any debt nondischargeable based solely on a debtor's status as a convicted

criminal. While § 523(a) and § 1328(a) include provisions that except from discharge criminal restitution debts,[9] these provisions actually disprove the Receiver's contention. Each of these statutory provisions renders a debt nondischargeable based on the type of sentence imposed by a criminal court, not on the debtor's mere status as a convicted criminal. The criminal conviction by itself or a debtor's status as a convicted criminal has no independent legal significance under these provisions or, as is pertinent in this proceeding, under 11 U.S.C. § 523(a)(4).

■ The Receiver's second legal premise is equally flawed. The oft-repeated (and indisputable) principle that the benefits of a bankruptcy discharge are reserved for the "honest" debtor is not a discrete element of any statutory cause of action found in 11 U.S.C. § 523(a) that excepts a particular debt from discharge or that mandates the denial of a debtor's entire discharge under 11 U.S.C. § 727(a). Rather, the "honest debtor principle" is a general expression of the public policy that underlies the existence of certain Code provisions that limit the scope or require denial of a debtor's discharge. *See, e.g.,* 11 U.S.C. § 523(a)(2), (4), (6); *id.* § 727(a)(2), (3), (4). However, each of those Code provisions includes specific statutory elements that must be satisfied before a debt is excepted from discharge or a discharge denied.

Indeed, one might characterize the principle that the full bankruptcy discharge should not be afforded to a dishonest debtor as the ultimate conclusion made by the bankruptcy court *after finding that all of the elements of a particular Code provision that limits the scope or mandates the*

---

**9.** Section 523(a)(13) makes federal criminal restitution orders nondischargeable. Case law under 11 U.S.C. § 523(a)(7) establishes that state criminal restitution orders are non-

dischargeable. Section 1328(a)(3) renders criminal restitution obligation imposed as part of a criminal sentence nondischargeable in chapter 13 cases.

*denial of discharge have been satisfied.* The point here is that none of the relevant statutory provisions includes a separate element relating to the debtor's "dishonesty" or requires a discrete finding by the court that the debtor is "honest."

■ Most fundamentally, the Receiver appears to misunderstand that in order to prevail under § 523(a)(4), a plaintiff must prove all of the elements of the claim set forth in the statute. In some circumstances, a criminal conviction may have some evidentiary value in proving one of the elements, if, for example, collateral estoppel applies (a subject discussed further in the next section of this Memorandum). But the existence of a criminal conviction, in and of itself, or the notion that a particular type of conviction establishes the dishonest character of a debtor does not alone make out a claim under § 523(a)(4).[10]

■ For all of the same reasons, the Receiver's bold but unsubstantiated assertion that the bankruptcy court's equitable nature dictates a reversal of the prior decision, (Motion at 6), is equally insupportable. The Receiver's loss on summary judgment may not be reconsidered simply because, from the Receiver's perspective, the decision resulting in the discharge of a debt of a convicted criminal is "unfair"—

even if, in some abstract sense, it could be so characterized.[11] The bankruptcy court is only a court of equity *within the confines of the Bankruptcy Code. See, e.g., In re Combustion Eng'g, Inc.,* 391 F.3d 190, 236 (3d Cir.2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself." (citing *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988))); *accord Disch v. Rasmussen,* 417 F.3d 769, 777 (7th Cir.2005) ("a judge does not have 'free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness, however enlightened those views may be.'" (quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 791 F.2d 524, 528 (7th Cir.1986))).

■ The decisive legal principle here is that if a bankruptcy court concludes correctly that a plaintiff in an action under § 523(a)(4) fails to produce evidence supporting an essential element of the claim, that is the end of the matter; judgment must be entered in favor of the debtor. While the Receiver cites a number of cases in support of the broad position that "the discharge is inapplicable to the dishonest debtor,"[12] these cases do not stand for the

---

10. To be relevant in a § 523(a)(4) proceeding, a debtor's conviction of a crime must be related to the transaction giving rise to the debt whose dischargeability is being determined. Otherwise, consideration of the conviction would run afoul of Fed. R. Evid. 404(b), which provides that evidence of a crime or other wrongful act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See U.S. v. Morley,* 199 F.3d 129, 133 (3d Cir.1999); *U.S. v. Sampson,* 980 F.2d 883, 887 (3d Cir.1992).

11. The Receiver's premise that the October 11, 2011 judgment in favor of the Debtor in the bankruptcy court § 523(a)(4) proceeding

will work an "unfairness" against the creditors of PRSI is questionable. If, as the Receiver undoubtedly expects, the Debtor's conviction and $14 million nondischargeable criminal restitution obligation eventually are finalized in the Florida Criminal Proceeding, it is difficult to see why the outcome of this adversary proceeding will have any practical consequences that will prejudice the Receiver's ability to recover against the incarcerated Debtor, much less any prejudice that rises to the level of "manifest injustice."

12. *See* Receiver's Reply Memo at 3 (citing *In re Rountree,* 478 F.3d 215 (4th Cir.2007) (discussing § 523(a)(2)(A)); *In re Jercich,* 238 F.3d 1202 (9th Cir.2001) (discussing

proposition that any dishonest debtor should be denied a discharge without regard to the quality and relevance of the evidence offered by the plaintiff in the adversary proceeding brought to except the debt from discharge. Rather, the cited cases discuss the statutory provisions governing nondischargeability determinations and apply the principle that I have stated above: that in order to prevail on an action under § 523(a), a creditor must produce evidence that meets the statutory requirements and make out its case by a preponderance of the evidence. *See also Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The cited authorities actually belie the Receiver's argument because they highlight that he had the opportunity—but failed—to produce evidence supporting all of the necessary elements for a determination that a debt is nondischargeable under § 523(a)(4).

▬ Finally, the Receiver's suggests that dischargeability determinations under § 523(a) involve the application of different legal standards, depending upon whether the proceeding involves an "honest debtor." *See* Motion ¶ 7 ("In utilizing *the [legal] standard reserved for honest debtors*, this Court has crafted a decision that is manifestly unjust. . . .") (emphasis added); *id.* ¶ 8 ("the Court appears to have utilized a traditional analysis . . . for a determination whether the elements of Section 523(a)(4) have been adequately established to defeat [the Debtor's] motion. . . . [T]hat traditional analysis is wholly inadequate."); Receiver's Reply Brief at 4 ("Simply put, to the extent that this Court applied *the standard for dischargeability reserved for the honest debtor* to a patently dishonest debtor, this Court clearly misapplied the law") (emphasis added).

I reject out of hand this insupportable legal theory. There is no legal authority whatsoever that supports the Receiver's contention that in a § 523(a) dischargeability determination the court is obliged to undertake a two-step process—first determining whether the defendant-debtor is "honest" and then applying or fashioning different, non-statutory elements for a "dishonest" debtor. I decline to adopt the Receiver's imaginary legal principles.

**2.**

The Receiver is at least on more conventional ground in complaining that I accorded insufficient weight to the Debtor's conviction in the Florida Criminal Proceeding in evaluating whether the Receiver proved the Debtor's fraudulent intent.

In the opinion accompanying the October 11, 2011 summary judgment order, I wrote:

> The Receiver's reliance on the Debtor's conviction in the U.S. District Court for the Southern District of Florida to establish the Debtor's fraudulent intent in the handling of the funds CitX received from PRSI is misplaced. The Debtor was convicted of RICO violations, conspiracy to commit mail fraud and/or wire fraud, conspiracy to commit money laundering, and stock fraud. Although the criminal case referenced the business arrangement between CitX and PRSI, the operative set of facts that gave rise to the Debtor's conviction related to the Debtor's fraudulent misrepresentations to induce investors to purchase stock in CitX and was not based upon the funds received from PRSI.

*See Roemmele*, 2011 WL 4804833, at *7 n. 12.

In the Motion, the Receiver argues that the above statement was incorrect and that "the conviction arose, *at least in part,*

§ 523(a)(6)); *In re Detrano*, 266 B.R. 282 (E.D.N.Y.2001) (discussing § 523(a)(4))).

out of [the Debtor's] and CitX's relationship with PRSI." (Motion ¶ 31, emphasis added). The Receiver contends that the Debtor's conduct in the Florida Criminal Proceeding arose "out of the very transactions forming the basis of this adversary action," (Motion ¶ 28), and, therefore, that I failed to consider the conviction "as evidence of [the Debtor's] fraudulent intent and fraudulent plan to defraud PRSI by way of embezzlement and/or larceny, (*id.* ¶ 35).[13]

This argument, too, is without merit.

The Receiver does not dispute that, in response to the Debtor's 2008 MSJ (or in support of his 2007 MSJ), he presented no evidence to establish that the Debtor's criminal conviction was based on the same conduct giving rise to his 11 U.S.C. § 523(a)(4) claim. The Receiver's 2007 MSJ merely stated, conclusorily, that "the Defendant has been convicted of multiple acts of fraud" and attached the verdict in the Florida Criminal Proceedings (the "Verdict"). (Doc. # 184 and Exh. J). The Verdict offers no background or explanation as to the circumstances of the Debtor's criminal conviction.

The Receiver has now come forward with the evidence that he contends meets his burden, having attached to the Motion and his Reply Brief copies of the following documents from the Florida Criminal Proceeding: (a) the 47 page indictment of the Debtor and his co-defendants; (b) the court docket entries from the Florida Proceeding; (c) the Jury Verdict; (d) the court's sentence of the Debtor; and (e) the appellate decision (cited earlier in this Memorandum and reported at *U.S. v. Hein*, 395 Fed.Appx. 652). According to the Receiver, these documents constitute evidence of the Debtor's fraudulent intent in connection with the larceny and embezzlement prongs of his § 523(a)(4) claim.

■ The Receiver can prevail on the Motion only if it is appropriate to permit him to present new evidence after the court has already entered judgment. Yet, he offers no reason why he failed to present all of this evidence previously in connection with the Second Cross–Motions. For this reason alone, the Motion must be denied. *See Blystone v. Horn*, 664 F.3d 397, 415–16 (3d Cir.2011) (defining "new evidence" for purposes of a motion to dismiss as "evidence that a party could not earlier submit to the court because that evidence was not previously available" and holding that evidence "that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration") (quoting *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985)); *Egonmwan v. Cook County Sherriff's Dept.*, 602 F.3d 845, 852 (7th Cir.2010) ("motions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier").

■ Nor is it even clear that consideration of the Receiver's new evidence demonstrates that the entry of summary judgment against the Receiver resulted from any clear error of law or fact.

The allegations in Count I of the Indictment that led to the Debtor's trial and conviction do concern, at least in part, the transaction that is the subject of the adversary proceeding. The Indictment alleges, *inter alia*, that: (a) the CEO of PRSI was a co-conspirator of the Debtor; (b) PRSI, CitX, the Debtor and the Debtor's co-conspirators acted in association to

---

13. In the Receiver's 2007 MSJ, the Receiver advanced two arguments in support of his motion: (1) that the Debtor and CitX received the $700,000.00 for a specific purpose under the parties' business contracts and thereafter wrongfully misappropriated those funds; and (2) that the Debtor and CitX misappropriated PRSI's customer list.

form a RICO "enterprise;" (c) the object of the enterprise was to generate money by fraudulent activities; (d) PRSI was incorporated to market the products of the enterprise; (e) the Debtor and other co-conspirators caused PRSI to make fraudulent representations about CitX products as part of the fraudulent conduct of the enterprise.

Thus, there is no doubt that the indictment which led to the Debtor's conviction made allegations of fraudulent activity and included PRSI (or at least its principals) as being involved in the alleged scheme. However, it is questionable, at best, whether the Indictment, by itself, constitutes any evidence that can be considered on summary judgment as it is nothing more than a series of unproven, hearsay allegations. The indictment, in conjunction with the conviction, could provide evidence material at the summary judgment stage of this adversary proceeding. Even so, it remains unclear whether PRSI's transfer of assets to CitX, in furtherance of a conspiracy among the principals of both companies, legally constituted an embezzlement or larceny by CitX (acting through the Debtor as its principal) of PRSI's property (*i.e.,* the $700,000.00 at issue) within the meaning of 11 U.S.C. § 523(a)(4). It also is not necessarily obvious that all of the facts alleged in the Indictment were proven at trial. Rather relying on the broad brush of the Indictment in conjunction with the conviction as evidence of embezzlement or larceny, the Receiver could have offered excerpts from the trial transcripts in the Florida Criminal Proceeding in order to demonstrate at summary judgment that he had evidence supporting each element of his § 523(a)(4) case.

Even in presenting this new evidence to the court, the Receiver has asked the court to make sweeping conclusions without the benefit of any legal analysis. It is the Receiver's burden to "connect the dots" between the Indictment and/or the conviction and the elements of § 523(a)(4) and he has not done so. Suffice it to say, the Receiver's tardy evidence is not a "smoking gun" that demonstrates this court's clear error in granting the Debtor summary judgment, as is required under Rule 59(e).

In any event, based on the Receiver's failure to offer this evidence in a timely fashion and my conclusion that he is not entitled to do so now, it is not necessary to decide whether the evidence the Receiver now seeks to offer would create a material issue of fact so as to preclude the entry of summary judgment.

**3.**

Finally, the Receiver suggests that he has been denied the opportunity to take the discovery necessary to prove his case. (Motion ¶ 1). This argument is simply frivolous.

At the outset of this adversary proceeding, the Receiver had the opportunity to conduct discovery for almost two (2) years—between the December 2001 commencement of the adversary proceeding and the December 15, 2003 discovery deadline set by the court. (Doc. # 78). The adversary proceeding was not stayed initially by the court until March 30, 2005, more than another year after the close of discovery, during which time the Receiver could have requested leave to take additional discovery.

Further, the Receiver believed the record sufficiently developed to file not one (1), but two (2) motions for summary judgment.

Perhaps most significantly, if the Receiver believed that he needed additional discovery in order to defend against the Debtor's 2008 MSJ, he could have asserted

that in his response. *See* Fed. R. Bankr.P. 7056(d). He did not.

Finally, I note that promptly after the entry of judgment, the Receiver proffered to the court additional evidentiary material derived from the Florida Criminal Proceeding that undoubtedly was available to him earlier. Among those documents was the court docket, which shows that numerous trial transcripts were available for review by the Receiver and submission to this court. If, as the Receiver contends, the criminal case and this adversary proceeding relate to the same transactions, those transcripts undoubtedly would contain sworn statements in support of the Receiver's case that he could have submitted in support of his 2007 MSJ and in opposition to the Debtor's 2008 MSJ.

Based on this history, it is impossible to believe that the Receiver lacked an adequate opportunity to marshal his case before this court resolved the cross-motions for summary judgment in 2011.

## IV. CONCLUSION

At the summary judgment stage of this adversary proceeding, the Receiver erred by losing sight of the requirement that, in responding to a defendant's motion for summary judgment under Rule 56, a plaintiff who bears the burden of proof must come forward with evidence that satisfies every element of his claim.

The Receiver's Motion for Reconsideration is based on the implicit premises that his right to survive the Debtor's 2008 MSJ and proceed to trial should have been evident to the court from the Debtor's criminal conviction and that it was equally evident that the nondischargeability claim under 11 U.S.C. § 523(a)(4) stemmed from the same conduct that resulted in the Debtor's conviction. Neither of these predicates was in the record or is as obvious as the Receiver suggests. In the al-

ternative, the Receiver asks this court for a second chance to present his case by now offering evidence that was available earlier, again because he considers it obvious that the Debtor is unworthy of receiving a full bankruptcy discharge.

The Receiver's Motion must be denied because he has offered no excuse for his failure to come forward with his evidence in a timely fashion and no justification for granting him a second bite at the apple. Contrary to his suggestion, there are no legal principles that justify the application of more lenient standards to the Receiver under Fed.R.Civ.P. 56 and 59 based solely on the Debtor's criminal conviction. While the Receiver's argument that dishonest debtors should be denied a complete bankruptcy discharge at least has some bearing in logic and public policy, the Receiver has offered no excuse for his procedural neglect. The Receiver and his counsel have been litigating this case for ten (10) years and only in the last exhibit to his Reply Brief on a Motion for Reconsideration did the Receiver finally attach some evidence that the Debtor's conviction may be related to this adversary proceeding (and even then, the Receiver did not spell out how so with any precision).

Further, even if I were to heed the Receiver's request to approach the request for reconsideration with the maximum liberality available to a court of equity, I would reach the same result. Not only has the Receiver's failed to present his evidence timely as required by Rule 56 without any excuse, but it appears probable that a restitution and forfeiture order will be issued, eventually, in the Florida Criminal Proceeding, thereby providing PRSI's creditors with an a remedy equivalent to that available from this court. These circumstances lead me to conclude that this is not a case in which the equities dictate the conclusion that any manifest

injustice will result from a failure to reconsider the prior order.

In reaching this result, I am cognizant that there may be merit to the Receiver's § 523(a)(4) claim and I do not lightly deny the Motion. However, in my judgment, in the particular circumstances presented here, the policies embodied in Fed.R.Civ.P. 56 and 59, that are designed to promote an orderly and efficient adjudication process and to accord finality to that process are paramount, outweighing the risk that an incorrect result on the merits has been reached in this proceeding.

For the reasons set forth above, the Reconsideration Motion will be denied. An appropriate order will be entered.

### ORDER

**AND NOW**, upon consideration of the Motion for Reconsideration of the October 11, 2011 Memorandum Opinion and Order Granting Summary Judgment in Favor of the Debtor (the "Motion") (Doc. # 269), filed Plaintiff Philip J. Von Kahle, Successor Receiver on Behalf of Professional Resources Systems International, Inc. a/k/a PRSI, Inc., and for the reasons states in the accompanying Memorandum,

It is hereby **ORDERED** that the Motion is **DENIED**.