# Third District Court of Appeal

## State of Florida

Opinion filed March 17, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1418
Lower Tribunal No. F96-38947
_____

**Givanni Torrell Parks,**
Petitioner,

vs.

**The State of Florida,**
Respondent.

A Case of Original Jurisdiction – Habeas Corpus.

Givanni Torrell Parks, in proper person.

Ashley Moody, Attorney General, and Ivy R. Ginsberg, Assistant Attorney General, for respondent.

Before LOGUE, LINDSEY, and MILLER, JJ.

MILLER, J.

Petitioner, Givanni Torrell Parks, seeks habeas corpus relief from his conviction and sentence for second-degree murder, in violation of section 782.04(2), Florida Statutes, burglary with assault, in violation of section 810.02(2)(a), Florida Statutes, and attempted armed robbery, in violation of section 812.13(2)(b), Florida Statutes. In the instant petition, Parks contends after he was sentenced pursuant to a negotiated plea agreement, he was deprived of his Sixth Amendment right to counsel while testifying in a deposition as a cooperating witness against his accomplice. Concluding Parks has failed to establish the manifest injustice necessary to warrant relief, we deny the petition.

## BACKGROUND

In 1996, Parks was indicted for first-degree murder, burglary with assault, and attempted armed robbery. He subsequently entered into a written plea agreement with the State. Pursuant to the terms, Parks pled guilty to second-degree murder, burglary with assault, and attempted armed robbery, in exchange for a negotiated sentence of twenty-five years in state prison. Parks further agreed to testify as a cooperating witness in the prosecution of his cohort, Rionne Ellery Jackson, consistent with the contents of his post-Miranda[1] statement to law enforcement. Specifically, he

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

"agree[d] to give at any and all hearings, depositions, and trials, complete and detailed truthful statements identifying . . . Rionne Ellery Jackson as being the person with the firearm who shot the victim . . . All such truthful statements [were required] to be factually consistent with his sworn statement." Any material breach of the plea agreement endowed the State with "the right to move the Court to vacate the Defendant's sentence of twenty-five (25) years and sentence the Defendant to <u>life</u> in prison."

After Parks began serving his sentence, Jackson was arrested and charged with the murder. The State listed Parks as a witness, and Jackson's criminal defense attorney noticed him for deposition. At the beginning of the deposition, Parks requested counsel. Jackson's lawyer and the prosecutor initially agreed to recess the proceedings in order to apprise the trial court of the issue, but, ultimately, moved forward with the deposition. Parks was reluctant and combative, and repeatedly claimed to have little memory of the events surrounding the homicide. Although he was furnished with a copy of the plea contract and his sworn statement, he refused to implicate his "co-defendant as the shooter." <u>Parks v. State</u>, 863 So. 2d 382 (Fla. 3d DCA 2003).

Following the deposition, the State sought to declare Parks in violation of the plea agreement. The trial court found him in breach, vacated his twenty-five-year sentence, and resentenced him to life in prison.

Parks appealed the resentencing order and this court reversed, finding Parks was denied the right to conflict-free counsel. Parks v. State, 782 So. 2d 968 (Fla. 3d DCA 2001). Upon remand, new counsel was appointed. Parks was again found in violation of the agreement and sentenced to a term of life. A direct appeal and ensuing collateral attacks on the judgment and sentence proved unfruitful. See Parks v. State, 252 So. 3d 367 (Fla. 3d DCA 2018); Parks v. State, 194 So. 3d 1034 (Fla. 3d DCA 2016); Parks v. State, 178 So. 3d 413 (Fla. 3d DCA 2015); Parks v. State, 151 So. 3d 1227 (Fla. 2014); Parks v. State, 126 So. 3d 352 (Fla. 3d DCA 2013); Parks v. State, 84 So. 3d 325 (Fla. 3d DCA 2012); Parks v. State, 68 So. 3d 246 (Fla. 3d DCA 2011); Parks v. State, 963 So. 2d 813 (Fla. 3d DCA 2007); Parks v. State, 932 So. 3d 193 (Fla. 2006); Parks v. State, 940 So. 2d 437 (Fla. 3d DCA 2006); Parks v. State, 863 So. 2d 382 (Fla. 3d DCA 2003); Parks v. State, 812 So. 2d 421 (Fla. 3d DCA 2002). The instant petition ensued.

## LEGAL ANALYSIS

"Article I, Section 13 of the Florida Constitution mandates the availability of the writ of habeas corpus." 2 Fla. Prac., Appellate Prac. § 9:6

4

(2019); see Art. I, §13, Fla. Const. "The great writ has its origins in antiquity and its parameters have been shaped by suffering and deprivation." Henry v. Santana, 62 So. 3d 1122, 1127 (Fla. 2011) (citation omitted). By way of the writ, courts are afforded a speedy method of conducting a "judicial inquiry into the cause of any alleged unlawful custody of an individual or any alleged unlawful, actual deprivation of personal liberty." Porter v. Porter, 60 Fla. 407, 410, 53 So. 546, 547 (1910).

Although "judicial review in the form of habeas proceedings serves as a backup plan" to guard against such erroneous deprivations, J.R. v. Hansen, 736 F.3d 959, 969 (11th Cir. 2013) (citation omitted), the writ "may not be used to . . . raise issues which would be untimely if considered as a motion for postconviction relief under rule 3.850." Barnard v. State, 949 So. 2d 250, 251 (Fla. 3d DCA 2007) (citing Baker v. State, 878 So. 2d 1236, 1245-46 (Fla. 2004)). Nevertheless, as Parks correctly urges, and we have previously held, "to prevent a manifest injustice and a denial of due process, relief may be afforded even to a litigant raising" an untimely or procedurally barred claim. Stephens v. State, 974 So. 2d 455, 457 (Fla. 2d DCA 2008) (citations omitted); see Johnson v. State, 226 So. 3d 908, 910 (Fla. 4th DCA 2017) (Appellate courts have "inherent authority to grant a writ of habeas corpus to avoid incongruous and manifestly unfair results.") (citation

5

omitted); <u>Harris v. State</u>, 12 So. 3d 764, 765 (Fla. 3d DCA 2008) ("An appellate court should correct manifest injustice in habeas corpus proceedings.") (citation omitted).  Thus, we turn to the merits of the petition on review.

## I.    <u>Manifest Injustice</u>

The term "manifest injustice" eludes judicial consensus or precise definition.  Nonetheless, this "exceptionally narrow concept" envisions "more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law."  <u>Slate v. Am. Broad. Cos., Inc.</u>, 12 F. Supp. 3d 30, 35-36 (D.C. Cir. 2013).  Accordingly, in defining the term, "several courts have applied the Black's Law Dictionary definition, which states that 'manifest injustice' is an 'error in the trial court that is direct, obvious, and observable, such as a defendant's guilty plea that is involuntary or that is based on a plea agreement that the prosecution rescinds.'"  <u>In re Roemmele</u>, 466 B.R. 706, 712 (Bankr. E.D. Pa. 2012) (quoting <u>Manifest Injustice</u>, <u>Black's Law Dictionary</u> (7th ed. 1999)).  Others have determined the error must be "apparent to the point of being indisputable.'"  <u>Id.</u> at 712 (citation omitted).  These principles guide our analysis today.

## II.    <u>Constitutional Right to Effective Assistance of Counsel</u>

The right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 16 of the Florida Constitution, is among those "immutable principles of justice which inhere in the very idea of free government."  Powell v. Alabama, 287 U.S. 45, 68, 53 S. Ct. 55, 64, 77 L. Ed. 158 (1932) (citation omitted); see also Amend. VI, U.S. Const. ("In all criminal prosecutions, the accused shall enjoy the right. . . to have the Assistance of Counsel for his defence."); Art. I, §16(a), Fla. Const. ("In all criminal prosecutions the accused shall, . . . have the right . . . to be heard in person, by counsel or both.").  "[O]nce the adversary judicial process has been initiated, . . . a defendant [has] the right to have counsel present at all 'critical' stages of the criminal proceedings."  Montejo v. Louisiana, 556 U.S. 778, 786, 129 S. Ct. 2079, 2085, 173 L. Ed. 2d 955 (2009) (citations omitted); see also Owen v. State, 596 So. 2d 985, 989 (Fla. 1992) ("[A]n accused is entitled to assistance of counsel at each 'critical stage' of the prosecution.") (citation omitted).  The Amendment requires not merely the provision of counsel to the accused, but "[a]ssistance," which is to be "for his [or her] defence."  Amend. VI, U.S. Const.  Thus, the core "purpose of the . . . counsel guarantee—and hence the purpose of invoking it—is to 'protec[t] the unaided layman at critical confrontations' with his [or her] 'expert adversary,' the

7

government, *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime."  McNeil v. Wisconsin, 501 U.S. 171, 177-78, 111 S. Ct. 2204, 2208-09, 115 L. Ed. 2d 158 (1991) (second alteration in original) (citation omitted).

Ordinarily, to prevail on a claim this right was compromised, the accused must satisfy the familiar two-prong test imposed under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).[2]  Firstly, he or she "must show that counsel's performance was deficient."  Id. at 687, 104 S. Ct. at 2064.  This involves demonstrating "counsel's representation fell below an objective standard of reasonableness."  Id. at 688, 104 S. Ct. at 2064.  Secondly, the accused "must show that the deficient performance prejudiced the defense."  Id. at 687, 104 S. Ct. at 2064.  Worded differently,

---

[2] Prior to Strickland, the applicable effectiveness standard was governed by McMann v. Richardson, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970), which stated,

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession.  Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

8

this requires proof that, "but for counsel's [deficiencies], the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068.

### A. United States v. Cronic, 466 U.S. 648 (1984).

In United States v. Cronic, 466 U.S. 648, 659-60, 104 S. Ct. 2039, 2047, 80 L. Ed. 2d 657 (1984), decided the same day as Strickland, the Supreme Court designated three narrow exceptions to the two-prong test, arising in those circumstances where the reliability of the adversarial process is so compromised that prejudice is presumed. The exceptions arise when either (1) the accused is completely denied counsel at a critical stage of the proceedings; (2) counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; or (3) the surrounding circumstances may justify the presumption of ineffectiveness without inquiry into counsel's actual performance at trial. State v. Trotter, 609 N.W.2d 33, 38 (Neb. 2000).

### B. Satterwhite v. Texas, 486 U.S. 249 (1988).

Four years after carving out these exceptions, the Supreme Court was confronted with the issue of whether the first among them, the denial of counsel at a critical stage in the proceedings, necessarily gives rise to an irrebuttable presumption of prejudice. Satterwhite v. Texas, 486 U.S. 249, 108 S. Ct. 1792, 100 L. Ed. 2d 284 (1988). In Satterwhite, the prosecutor subjected the accused to a pretrial psychiatric examination without providing

9

notice to defense counsel.  Id. at 252, 108 S. Ct. at 1795.  The psychiatrist later testified in sentencing proceedings that Satterwhite "was beyond the reach of psychiatric rehabilitation."  Id. at 260, 108 S. Ct. at 1799.  A jury subsequently sentenced him to death.

Relying upon an earlier high court decision, Estelle v. Smith, 451 U.S. 454, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981), holding a mental health examination constituted a "critical stage" of the adversarial proceedings, Satterwhite appealed his sentence.  On appeal, he argued the denial of counsel at such a critical stage created a structural infirmity warranting automatic reversal.  Id. at 257, 108 S. Ct. at 1798.

The Texas Court of Criminal Appeals agreed the psychiatric evaluation violated Satterwhite's Sixth Amendment right to assistance of counsel.  However, it concluded the error in admitting the testimony was harmless "because an average jury would have found the properly admitted evidence sufficient" to impose a sentence of death.  Id. at 253, 108 S. Ct. at 1796 (citation omitted).

Citing an ample body of precedent, the Supreme Court distinguished between cases "[i]n which the deprivation of the right to counsel affected—and contaminated—the entire criminal proceeding," and those involving the erroneous admission of evidence.  Id. at 257, 108 S. Ct. at 1798.  Compare

10

Holloway v. Arkansas, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978) (conflict of interest in representation throughout entire proceeding); Chapman v. California, 386 U.S. 18, 87 S. Ct 824, 17 L. Ed. 2d 705 (1967) (total deprivation of counsel throughout entire proceeding); White v. Maryland, 373 U.S. 59, 83 S. Ct. 1050, 10 L. Ed. 2d 193 (1963) (absence of counsel from arraignment proceeding affected entire trial because defenses not asserted were irretrievably lost); and Hamilton v. Alabama, 368 U.S. 52, 82 S. Ct. 157, 7 L. Ed. 2d 114 (1961) (denial of counsel at arraignment required reversal even where no prejudice was shown); with Buchanan v. Kentucky, 483 U.S. 402, 107 S. Ct. 2906, 97 L. Ed. 2d 336 (1987) (applying harmless error in a noncapital case to an alleged constitutional error in the use of a psychological evaluation at trial); Moore v. Illinois, 434 U.S. 220, 98 S. Ct. 458, 54 L. Ed. 2d 424 (1977) (applying harmless error analysis to the admission of post-indictment lineup identification testimony obtained in violation of the right to counsel); Milton v. Wainwright, 407 U.S. 371, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972) (holding the admission of a confession obtained in violation of Massiah v. United States, 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), to be harmless beyond a reasonable doubt); Gilbert v. California, 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178 (1967) (finding harmless error applicable in capital case erroneously admitting post-

11

indictment identifications obtained in violated of Sixth Amendment); and United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967) (finding post-indictment lineup was critical stage, but evidence adduced in the absence of counsel and later introduced could be analyzed under harmless error). It concluded the former category of cases warrants automatic relief, whereas the latter requires a harmless error analysis. Ultimately finding the error in admitting the expert testimony could not be deemed harmless beyond a reasonable doubt, the Court reversed the affirmance of the death sentence.

### C. Post-Satterwhite Jurisprudence

In the aftermath of Satterwhite, most courts have construed the reference to the absence of counsel from a "critical stage" in Cronic as reflecting "the Court's usage, at that time, of the phrase to indicate the stage of the proceedings 'both at which the Sixth Amendment right to counsel attaches and at which the denial of counsel necessarily undermines the reliability of the entire criminal proceeding.'" Rowsey v. United States, 71 F. Supp. 3d 585, 606 (E.D. Va. 2014) (quoting United States v. Owen, 407 F.3d 222, 228 (4th Cir. 2005)); see, e.g., United States v. Brown, 956 F.3d 522 (8th Cir. 2020); Acosta v. Raemisch, 877 F.3d 918 (10th Cir. 2017); United States v. Roy, 855 F.3d 1133 (11th Cir. 2017). Thus, they have applied an

12

analysis akin to harmless error in all but the most egregious denials of counsel. Against this background, we examine the instant claim.

### III. Instant Claim

Parks contends the deprivation of counsel during the post-plea deposition renders the proceedings presumptively unreliable. Concluding he has failed to demonstrate the deposition constituted both a critical stage in the proceedings and a point at which the denial of counsel "affected–and contaminated–the entire proceedings," we are not so persuaded. Satterwhite, 486 U.S. at 257, 108 S. Ct. at 1798; see Simmons v. United States, 390 U.S. 377, 382-83, 88 S. Ct. 967, 970, 19 L. Ed. 2d 1247 (1968).

Although arraignment, plea bargaining, jury selection, trial, and sentencing have been deemed critical, the Supreme Court has not yet identified an exhaustive list of all such stages. See McMillian v. State, 214 So. 3d 1274, 1285 (Fla. 2017) ("The Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings.") (citation omitted); Dunbar v. State, 89 So. 3d 901, 907 (Fla. 2012) ("[S]entencing is 'a critical stage of every criminal proceeding.'") (citation omitted); Muhammad v. State, 782 So. 2d 343, 351 (Fla. 2001) ("[T]he process of exercising challenges to members of the jury constitutes a critical stage of the proceedings where a defendant has a right

13

to be present.") (citation omitted); Sardinia v. State, 168 So. 2d 674, 676 (Fla. 1964) ("[I]n Florida an arraignment now constitutes a critical stage in a felony prosecution."); Cottle v. State, 733 So. 2d 963, 965 (Fla. 1999) receded from on other grounds by Alcorn v. State, 121 So. 3d 419 (Fla. 2013) ("[T]he plea process [is] a critical stage in criminal adjudication, which warrants the same constitutional guarantee of effective assistance of counsel as trial proceedings.") (citations omitted). Further, as relevant here, no Florida or Supreme Court decision has yet recognized post-plea cooperation as a crucial or critical stage of the proceedings. See United States v. Basu, 881 F. Supp. 2d 1, 5 (D.D.C. 2012) ("[T]he Supreme Court . . . [has not] decided whether the post-plea bargaining cooperation period also constitutes a critical stage.").

In the absence of any such express precedent, the term "critical stage" has traditionally denoted a "step of a criminal proceeding . . . that [holds] significant consequences for the accused." Bell v. Cone, 535 U.S. 685, 696, 122 S. Ct. 1843, 1851, 152 L. Ed. 2d 914 (2002) (citations omitted); see Van v. Jones, 475 F.3d 292, 312 (6th Cir. 2007) ("A critical stage presents a moment when '[a]vailable defenses may be irretrievably lost, if not then and there asserted,' . . . one 'where rights are preserved or lost,' . . . [one where the] 'potential substantial prejudice to defendant's rights inheres in the . . .

14

confrontation and ability of counsel to help avoid that prejudice,' [or one that] . . . holds 'significant consequences for the accused.'") (citations omitted) (first and fifth alterations in original).  Given this expansive standard, several federal courts have assumed "without deciding," and still others have determined, "the potential cooperation phase is a 'critical stage' of criminal proceedings to which the Sixth Amendment right to counsel applies." Tinajero–Ortiz v. United States, 635 F.3d 1100, 1105 n.4 (8th Cir. 2011); see also Wingo v. United States, 341 F. App'x 132, 134 (6th Cir. 2009) ("assum[ing] for [the] purpose[] of [the] appeal that [the defendant's] first debriefing . . . was a critical state of the proceedings"); United States v. Leonti, 326 F.3d 1111, 1120 (9th Cir. 2003) ("Because the period of cooperation is an adversarial confrontation 'in which potential substantial prejudice to the defendant's rights inheres and in which counsel may help avoid that prejudice,' it is a critical stage of a criminal proceeding.") (citation omitted); United States v. Ming He, 94 F.3d 782, 790 (2d Cir. 1996) ("Since sentencing is adjourned until defendant's side of the bargain has been performed, the defendant's rights have not been fully adjudicated and the government remains the cooperating witness's adversary . . . [Further,] constitutional ramifications of the debriefing session [are] serious, and their seriousness strongly supports the [defendant's need to] have the aid of

15

counsel when the government interviews him."); State v. Yarrell, 2009 WL 937216, at *4, 2009 N.J. Super. Unpub. LEXIS 993, at *12 (N.J. Super. Ct. App. Div. April 9, 2009) ("Assuming, as we do, that defendant had the right to counsel throughout the post-plea interviews and testimony, particularly because he had not been sentenced and the sentence was dependent on his cooperation.") (citations omitted). These decisions all arise in the context of post-plea, presentencing debriefing sessions which were "neither standardized nor governed by set rules." Ming He, 94 F.3d at 785.

The procedural posture presented in the instant case is distinguishable, rendering this line of authority inapposite. In each of the above cases, sentencing was adjourned pending the outcome of debriefing and negotiations. The potential sentence remained heavily dependent upon the reliability of the information supplied in the debriefing and the accused was actively represented by counsel. Nonetheless, each accused was deprived of counsel in the debriefing.

Conversely, here, Parks waived counsel during his post-Miranda statement. Later, when represented by counsel, he pled guilty, stipulated to the veracity of his earlier statement, and agreed to cooperate. Consequently, Parks first waived counsel and then was advised on the crucial threshold decision of whether to adopt the statement and assent to the essential terms

16

governing cooperation and breach, as embodied within the contract. Therefore, unlike the potential cooperation phase cases, there was no deprivation of counsel involved in his "debriefing" and the contours of his cooperation and sentencing exposure were well-defined.

Further, by the time he was deposed in Jackson's case, all pretrial procedures had concluded, his "guilt or innocence of the charged crime" had been decided, "his vulnerability to imprisonment" had been determined, and his attorney had been discharged.  Alabama v. Shelton, 535 U.S. 654, 674, 122 S. Ct. 1764, 1776, 152 L. Ed. 2d 888 (2002); see also Gerstein v. Pugh, 420 U.S. 103, 122, 95 S. Ct. 854, 867, 43 L. Ed. 2d 54 (1975) ("The Court has identified as 'critical stages' those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel.") (citations omitted); Woodward v. State, 992 So. 2d 391, 392 (Fla. 1st DCA 2008) ("A defendant has no absolute right to counsel in post-conviction proceedings.") (citations omitted).

Under these circumstances, the deposition constituted a pivotal stage in the adversarial proceedings against Jackson, not Parks, and the interests of Parks were closely aligned with those of the State.  Hence, although it cannot be said the State was "transformed into a neutral and impartial 'arm of the court,'" Leonti, 326 F.3d at 1120, Parks has not demonstrated the

17

deposition was a continuation of his own "adversarial proceedings where [his] rights were in danger of being 'irretrievably lost' if not safeguarded by the presence of counsel." Wingo, 341 F. App'x at 135-36 (citation omitted); see United States v. Beasley, 27 F. Supp. 3d 793, 810 (E.D. Mich. 2014) ("If there is no adversarial judicial proceeding, there is no Sixth Amendment right to counsel and thus no derivative right to effective assistance of counsel.").

Finally, here, despite having been provided ample opportunity to re-review his post-Miranda statement and the terms of the plea agreement, Parks steadfastly maintained he could not recall the details of the homicide and refused to implicate Jackson. Given this conduct, it is difficult to discern how the lack of counsel "led to a result that would not otherwise have occurred." Yarrell, 2009 WL 937216, at *4, 2009 N.J. Super. Unpub. LEXIS 993, at *12 (citations omitted); see Rowsey, 71 F. Supp. 3d at 608-09 ("Petitioner fully understood his obligation to speak truthfully to the agents during each debriefing . . . Petitioner has not shown a reasonable probability that [his counsel's] presence at the debriefings would have prevented Petitioner from lying to the agents."). Hence, Parks has failed to establish the deprivation of counsel "affected–and contaminated–the entire criminal proceeding." Satterwhite, 486 U.S. at 257, 108 S. Ct. at 1798.

Accordingly, the record is devoid of any showing of error "so patently unfair and tainted that [it] is manifestly clear to all who view it," In re Marinari, 596 B.R. 809, 819 (Bankr. E.D. Pa. 2019) (citation omitted), or Parks "is being illegally restrained of his liberty." Anglin v. Mayo, 88 So. 2d 918, 919 (Fla. 1956).  Thus, we deny the petition.

Petition denied.

LOGUE, J., concurs.

LINDSEY, J., dissenting.

With limited exceptions, which are not applicable here, Florida Rule of Criminal Procedure 3.850 is the mechanism through which those convicted of noncapital crimes "must file collateral postconviction challenges to their convictions and sentences." Baker v. State, 878 So. 2d 1236, 1245 (Fla. 2004); see also La-Casse v. Inch, 307 So. 3d 921, 923 (Fla. 3d DCA 2020) ("A petition for writ of habeas corpus may not be used to challenge the legality of a defendant's judgment of conviction. A defendant must seek such relief, if at all, through the procedure established in rule 3.850. Nor may habeas corpus be used as a substitute for an otherwise procedurally barred motion for postconviction relief under rule 3.850."); Welch v. State, 245 So. 3d 862, 863 (Fla. 1st DCA 2018); Buss v. Reichman, 53 So. 3d 339, 344-45 (Fla. 4th DCA 2011); Philip J. Padovano, 2 Fla. Prac., Appellate Practice § 30:6 (2019 ed.) ("Presently, the exclusive method of asserting a claim of ineffective assistance of trial counsel or any other collateral challenge to a judgment or sentence is to file a motion under [Rule 3.850].").

Because "[t]he remedy of habeas corpus is not available in Florida to obtain the kind of collateral postconviction relief available by motion in the sentencing court pursuant to rule 3.850[,]" Baker, 878 So. 2d at 1245, I would

20

dismiss the petition without addressing its merits. Though Parks invokes manifest injustice–"an exception to procedural bars to postconviction claims in only the rarest and most exceptional of situations[,]" <u>Cuffy v. State</u>, 190 So. 3d 86, 87 (Fla. 4th DCA 2015)–"[t]he mere incantation of the words 'manifest injustice' does not make it so." <u>Beiro v. State</u>, 289 So. 3d 511, 511 (Fla. 3d DCA 2019).