751 So.2d 715 (2000)
Timothy Renard LEWIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-1046.
District Court of Appeal of Florida, Fifth District.
February 18, 2000.
J. Stephen Alexander, St. Augustine, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Kellie A. Nielan, Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, J.
Timothy Renard Lewis challenges the denial of his motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, in which he alleged that his trial counsel was ineffective for failing to convey a favorable plea offer to him and for failing to properly inform him of the possibility and consequences of habitualization.
In 1996, Lewis was convicted of the offense of sale of cocaine and received a 15 year sentence as an habitual offender. In 1997, he filed a Motion for Post-Conviction *716 Relief in which he alleged that his trial counsel was ineffective for (1) providing misleading information which led him to reject a favorable plea offer, and (2) for failing to make him aware of the consequences of habitualization.
A hearing on the post conviction motion was delayed until resolution of appellant's direct appeal. In 1998, this court issued a short opinion affirming the conviction and sentence. Lewis v. State, 716 So.2d 852 (Fla. 5th DCA 1998). The hearing on the motion was then held and Lewis' trial counsel testified that he informed Lewis, prior to trial, that Lewis had the requisite number of prior convictions under the habitual offender statute but that the state attorney had not indicated that he would be seeking habitualization. Lewis' attorney also told Lewis that the state attorney had offered a plea agreement which involved a year in the county jail. If Lewis chose not to take the agreement and the matter went to trial, his attorney told him that he would be looking at two to three years in the Department of Corrections. The attorney did not give Lewis a copy of the written plea agreement, nor did he tell Lewis that he could possibly face up to 30 years as an habitual offender. He did inform Lewis, however, that if the prosecutor began hinting at habitualization, they would need to discuss the matter. Lewis' attorney, when asked specifically whether he should have advised his client of the possibility of being sentenced to up to 30 years as an habitual offender, replied:
Basically I told [Lewis] that I did not think that he faced those types of sanctions. Basically what [Lewis] was saying to me from the beginning is he didn't care what anyone threatened him with because he was innocent, he wasn't going to plead guilty to anything, he didn't do it.
And anytime I ever talked to [Lewis], he maintained his innocence. I didn't really understand as toI mean, I didn't that's not the word I'm looking for, but I never detected any type of sway in his attitude that he was anything but innocent of what he was accused of.
Lewis testified that the only plea bargain his attorney brought to his attention involved two to three years in prison. He further testified that he never saw the written plea offer in which the state agreed to 364 days in the county jail followed by five years of drug offender probation. In contrast to his attorney's testimony, Lewis testified that prior to his trial, he was completely unaware of habitual possibilities, "I neverI never even heard of habitual. I didn't know anything about habitual." Lewis further testified that he was completely unaware of the fact that he could receive either a 15 year, or a 30 year sentence as an habitual offender if he was found guilty. When asked if it was his understanding that "the maximum exposure was three years in prison," Lewis responded, "Yes, they told me that's what the deal was the state had offered me." When asked if he would have taken the offer of 364 days in the county jail and drug offender probation had he known that a possible consequence of being an habitual offender was 30 years in prison, the appellant replied, "If I even knowed about the 364 days that they came and supposed to gave to ... [my attorney], I would have took that. Probation would have been no problem. I had too much to lose to turn something like that there down if I had knowed about that." Lewis' wife corroborated her husband's testimony that pretrial, her husband was told of an offer that involved a sentence of two to three years in the Florida state prison system.
The trial court found that the testimony of Lewis and his trial attorney was conflicting and determined that the testimony of the attorney was more credible than that of either Lewis or his wife. The court then found that Lewis was advised of a possibility of habitualization even though he was also advised by his counsel that this habitualization was not likely, that Lewis was advised of the plea offer made *717 by the state, and that the testimony of the prosecutor and the trial attorney both clearly showed that Lewis had, at all times, professed his innocence and was never willing to plead anything but innocence. The court then noted that even if Lewis had not been advised of the offer for 364 days in the county jail plus five years drug offender probation, the court would not have approved the plea in view of Lewis' prior record.
Lewis insists that he would have accepted the plea offer of one year in jail had he known of it and had he known the penalties he faced. Case law uniformly holds that counsel is deficient if he fails to relate a plea offer to his client. Cottle v. State, 733 So.2d 963, 965 (Fla.1999), citing U.S. v. Rodriguez, 929 F.2d 747, 752 (1st Cir.1991). In order to prevail on an ineffective assistance of counsel claim based on an allegation that counsel failed to properly advise a defendant about a plea offer by the state, the claimant must show that: (1) counsel failed to communicate a plea offer or misinformed defendant concerning the penalty faced, (2) he, the defendant, would have accepted the plea offer but for the inadequate notice, and (3) acceptance of the state's offer would have resulted in a lesser sentence. Cottle, at 967. It is not necessary for a defendant to additionally establish that a trial court would have accepted the plea agreement offered by the state but not properly conveyed to the defendant. Id.
In the instant case, the evidence was disputed as to whether Lewis was informed of the pretrial plea bargain offered by the state. The trial court was free, of course, to determine that the testimony of Lewis' trial counsel that he informed Lewis of this plea offer was more credible than Lewis' testimony that he was not informed. Because matters of credibility are the domain of the trial court, we deny relief based upon the alleged failure to convey the plea offer.
However, the trial court did not, in its order denying relief, specifically address the second ground raised: whether trial counsel was ineffective for failing to make appellant aware, prior to trial, of the consequences of habitualization. The trial court's order attempted to reframe the issue by stating: "The defendant first alleges that his trial counsel ... never advised him of the possibility that he could be sentenced as a habitual offender if he was convicted." Lewis' 3.850 motion did not simply allege that his trial counsel failed to inform him of the possibility of habitualization, he alleged more specifically that he was not made aware of the consequences of habitualization. Lewis' trial counsel admitted that he did not inform Lewis of the possibility of a 30 year habitualization sentence. The attorney further testified that in all of his past dealings with prosecutors, in the 15 years he had been a lawyer, he had never experienced a situation where habitualization occurred after trial without a threat or warning, pretrial, that such would be sought. He testified that prosecutors had always dealt with him "straight up," meaning that if they intended to habitualize a particular defendant, they informed him during the plea negotiation process of their intention. In this case, he believed there was virtually no chance of habitualization because neither the plea offer nor his discussions with the prosecutor pretrial or during trial, indicated that the state intended to habitualize Lewis if he was convicted.
Despite the doubt cast on Lewis' credibility concerning his lack of knowledge of habitual offender penalties, given his past familiarity with the criminal law, the fact remains that Lewis was severely misinformed about the potential penalty he faced. Although Lewis' attorney thought that the possibility of a 30 year sentence was extremely remote, Lewis was still entitled to be informed of this possibility in making his decision to decline the state's offer. Lewis has shown that he was misinformed about the potential penalty he faced, that he would have accepted the *718 plea offer had he been adequately noticed, and that his acceptance of the plea offer would have resulted in a lesser sentence. See Cottle, at 966, citing Young v. State, 608 So.2d 111, 113 (Fla. 5th DCA 1992).
We conclude that Lewis is entitled to relief because his trial counsel conceded that when the state's offer of one year was made, he failed to inform Lewis of a potential sentence of 30 years incarceration and consistently informed him, instead, that his maximum exposure of incarceration was two to three years. Even though the possibility of a much longer sentence seemed remote, the possibility became the reality. Lewis, in order to make an informed decision, needed to be aware of the possible penalties. We remand to the trial court to conduct a trial on the original charges made against Lewis but would encourage, as well, good faith resumption of plea negotiations. See, e.g., Garcia v. State, 736 So.2d 89 (Fla. 4th DCA 1999); U.S. v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).
RELIEF GRANTED; REMANDED.
W. SHARP, and HARRIS, JJ., concur.