PARIENTE, J.
This case involves ineffective assistance of counsel claims arising out of counsel’s failure to correctly inform the defendant of *422 the maximum penalty he faced before rejecting a plea offer. Such claims are rooted in the Sixth Amendment to the United States Constitution, which provides that the accused shall have the right to effective assistance of counsel in all criminal prosecutions. Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012). The United States Supreme Court has recognized that the plea bargaining stage is a critical one, at which defendants are constitutionally entitled to effective counsel: “The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.” Id. at 1407.
Here, Alcorn’s counsel failed to correctly inform him of the maximum penalty that he faced before rejecting a plea offer, and Alcorn asserts a Sixth Amendment ineffective assistance of counsel claim on that basis. To prevail, Alcorn must show that (1) counsel’s performance was deficient and (2) the deficient performance prejudiced the defense. There is no dispute that the failure in this case constitutes deficient performance. Accordingly, the question centers on how to apply the prejudice prong.
Alcorn rejected a twelve-year plea offer upon being incorrectly advised that his maximum sentence was thirty years, when in fact he faced a maximum sentence of life imprisonment because he qualified as a habitual felony offender (HFO). In the decision below, the Fourth District concluded that Alcorn could not show prejudice because, after trial, he ultimately received a thirty-year sentence — the same sentence as what he was incorrectly advised. Alcorn v. State, 82 So.3d 875, 879 (Fla. 4th DCA 2011). The Fourth District then certified conflict with the decisions of the Fifth District in Lewis v. State, 751 So.2d 715 (Fla. 5th DCA 2000), and the Second District in Revell v. State, 989 So.2d 751 (Fla. 2d DCA 2008).[1] See Alcorn, 82 So.3d at 879.
Subsequent to the Fourth District’s decision in Alcorn, the United States Supreme Court issued two decisions concerning ineffective assistance of counsel claims in which the defendant rejected a plea offer based on misadvice. See Frye, — U.S. -, 132 S.Ct. 1399, 182 L.Ed.2d 379; Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).[2] In light of Frye and Lafler, we recede from this Court’s decisions in Cottle v. State, 733 So.2d 963 (Fla.1999), and Morgan v. State, 991 So.2d 835 (Fla.2008), with respect to what the defendant must show in order to demonstrate prejudice. We hold that in order to show prejudice, the defendant must demonstrate a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed.
*423 For the reasons set forth below, we quash the Fourth District’s decision in Al-corn because the Fourth District incorrectly analyzed the prejudice prong, but we also disapprove the conflict cases Revell and Lewis because their analysis is inconsistent with the United States Supreme Court’s decisions in Frye and Lafler. In addition, we recede from Morgan and Cot-tle regarding the requirements for demonstrating prejudice for claims of ineffective assistance of counsel when a defendant does not accept a plea offer and instead proceeds to trial.
FACTS AND BACKGROUND
In 2004, the State charged Alcorn with two drug-related offenses: (1) sale of cocaine within 1,000 feet of a church (Count I), a first-degree felony punishable by a maximum thirty-year sentence, see § 893.13(l)(e)l., Fla. Stat. (2004); and (2) possession of cocaine (Count II), a third-degree felony punishable by a maximum five-year sentence, see 893.13(6)(a), Fla. Stat. (2004). However, because Alcorn qualified for HFO sentencing enhancement under section 775.084(l)(a), Florida Statutes (2004), the maximum sentence for Count I as charged was life imprisonment. Prior to trial, the State offered Alcorn a twelve-year sentence in exchange for a guilty plea, operating under the mistaken belief that Alcorn did not qualify for HFO sentencing. Defense counsel, also mistakenly believing that Alcorn did not qualify for HFO sentencing, advised Alcorn that the maximum sentence he faced for Count I as charged was thirty years’ imprisonment. The State’s plea offer was not accepted, and Alcorn’s case proceeded to trial under the assumption that Alcorn did not qualify for HFO sentencing.
At trial, the State was unable to prove that the alleged sale had occurred within 1,000 feet of a church. Consequently, the State stipulated to Alcorn’s acquittal for that element of Count I and agreed to proceed on the lesser offense of simple sale of cocaine — a second-degree felony punishable by a maximum fifteen-year sentence, see 893.13(l)(a)l., Fla. Stat. (2004). The jury found Alcorn guilty of this lesser offense, as well as Count II as originally charged (possession of cocaine).
After trial but prior to sentencing, the State discovered that Alcorn was in fact eligible for HFO classification and filed a written notice of intent to seek an enhanced penalty based on Alcorn’s HFO status. The HFO enhancement subjected Alcorn to a maximum sentence of thirty years’ imprisonment for the sale of cocaine conviction. At sentencing, the State established that Alcorn qualified as an HFO and thus requested that the judge sentence him accordingly. Before the trial court imposed a sentence, Alcorn voiced a concern that he had never been informed of the possibility that he could be classified as an HFO, and he also stated that he was unfamiliar with the State’s plea offer. The trial court found that Alcorn in fact met the criteria for enhanced sentencing under the HFO statute, and the trial court sentenced him to an enhanced sentence of thirty years’ imprisonment for the sale of cocaine conviction and to a sentence of five years’ imprisonment for his possession of cocaine conviction, to run concurrently.
Alcorn moved for postconviction relief in 2008, arguing in pertinent part “two distinct claims of ineffective assistance of counsel: (1) that he was not advised of the [twelve-year] plea offer; and (2) that he was not advised of the maximum sentence he faced at the time of the plea offer.” Alcorn, 82 So.3d at 876. Alcorn alleged that he would have accepted the State’s twelve-year offer had he been apprised of this information. Id.
*424 The trial court conducted an evidentiary hearing to resolve these interrelated claims. The undisputed testimony from the evidentiary hearing revealed that neither trial counsel nor the prosecutor was aware that Alcorn qualified as an HFO prior to trial. Instead, both had erroneously concluded that Alcorn was ineligible for such a classification. Furthermore, before proceeding to trial, Alcorn was not advised that as an HFO, he could be sentenced to life in prison for the first-degree felony as charged in Count I.
The prosecutor who tried Alcorn’s case testified that he recalled conveying two different plea offers to trial counsel via email. The first offer was for a twenty-year sentence as an HFO, but then confusion arose over whether Alcorn was eligible for HFO classification. Operating under a mistaken belief that Alcorn did not qualify as an HFO, the prosecutor made a renewed offer of a twelve-year sentence in exchange for a guilty plea. It was only after trial that the prosecutor discovered that Alcorn in fact was eligible for classification as an HFO.
Alcorn’s trial counsel testified that she did not have a specific recollection of conveying the twelve-year plea offer to Al-corn, but that she was certain of having done so based on her general practice and the circumstances, including the timing of events, the notes in the case file, and emails she had exchanged with the prosecutor. An e-mail chain introduced into evidence by the State — and corroborated by testimony from both the prosecutor and trial counsel — established that prior to trial, counsel requested a plea offer from the prosecutor, who initially offered a twenty-year sentence in response because Alcorn qualified as an HFO. Counsel wrote back, stating that Alcorn did not meet the statutory criteria for an HFO designation. In response, the prosecutor agreed that Al-corn did not qualify as an HFO and offered another plea with a twelve-year sentence instead. Counsel testified that had she known the possibility for HFO classification, she would have informed Alcorn that the maximum sentence he faced was life imprisonment, not thirty years.
Alcorn testified that before trial, he asked his counsel to obtain a plea offer from the State but never received any offers. Alcorn claimed that he only became aware the State had offered any type of plea at his sentencing hearing after trial. Although Alcorn discussed the possibility of HFO sentencing with counsel prior to trial, he believed at the time of trial that he did not qualify for such a classification. According to Alcorn, his attorney informed him that the State affirmatively stated that he was not an HFO. Alcorn testified that had he been presented with the State’s twelve-year plea offer, he would have accepted it.
Upon reviewing the evidence and testimony, the trial court denied Alcorn’s motion for postconviction relief, finding that counsel conveyed the State’s twelve-year plea offer to Alcorn, who decided to reject the offer and take his chances at trial. The trial court did not discuss counsel’s misadvice regarding Alcorn’s statutory maximum penalty as an HFO. The trial court therefore did not rule on the issue of whether Alcorn would have accepted the twelve-year plea offer had he been properly advised at that time of the correct statutory maximum sentence he faced as an HFO: life in prison.
On appeal, the Fourth District affirmed the denial of postconviction relief. See Alcorn, 82 So.3d at 876. The district court first determined that the trial court’s factual finding that counsel conveyed the twelve-year plea offer to Alcorn before trial, but that Alcorn was not satisfied with the offer and told counsel to demand a *425 speedy trial, was supported by competent, substantial evidence. See id. at 877-78. Alcorn does not challenge that determination in this Court.
Next, without referencing the trial court’s failure to expressly rule on the second aspect of Alcorn’s ineffectiveness claim, the Fourth District held that although Alcorn was under the misimpression that he did not qualify as an HFO when he rejected the plea offer, no prejudice resulted because he ultimately received a sentence no greater than that which he knew could be imposed under his original first-degree felony charge — thirty years’ imprisonment. See id. at 877, 879. Citing its earlier decision in Lester v. State, 15 So.3d 728 (Fla. 4th DCA 2009), the Fourth District reasoned that “the correct remedy in this situation is not to grant a new trial or remand for renewed plea negotiations, as other courts have held, but to impose a sentence no greater than ‘the expected maximum sentence [Al-corn] would have received by proceeding to trial based upon [the] attorney’s advice.’” Alcorn, 82 So.3d at 879 (quoting Lester, 15 So.3d at 729).
The Fourth District certified that its decision was in direct conflict with the Second and Fifth Districts’ decisions in Revell and Lewis. Alcorn, 82 So.3d at 879. In contrast to the Fourth District’s holding in the decision below, in Revell and Lewis, the Second and Fifth Districts held that where counsel fails to accurately advise the accused of the maximum sentence he or she faces when considering a plea offer, and the defendant alleges that he would have taken the plea had counsel so informed him, a claim of ineffective assistance is established, with the proper remedy being to “remand[] for a new trial, encouraging a ‘good faith resumption of plea negotiations.’ ” Revell, 989 So.2d at 753 (quoting Lewis, 751 So.2d at 718).
ANALYSIS
The certified conflict issue in this case concerns the proper standard governing ineffective assistance of counsel claims where counsel failed to correctly inform the defendant of the maximum penalty he faced before rejecting a plea offer. Claims of ineffective assistance of counsel are guided by the two-pronged test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove a claim under Strickland, a defendant must show (1) that counsel’s performance was deficient and (2) that the deficient performance prejudiced the defense. Id. at 687, 104 S.Ct. 2052. The deficiency prong requires the defendant to establish conduct on the part of counsel that is outside the broad range of reasonableness under prevailing professional standards. Id. at 688, 104 S.Ct. 2052. There is a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance. Id. at 689, 104 S.Ct. 2052.
The Strickland prejudice prong requires the defendant to establish “a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. “That standard does not ‘require a defendant to show that counsel’s deficient conduct more likely than not altered the outcome of his penalty proceeding, but rather that he establish a probability sufficient to undermine confidence in [that] outcome.” Parker v. State, 89 So.3d 844, 855 (Fla.2011) (quoting Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 455-56, 175 L.Ed.2d 398 (2009)).
Both prongs of the Strickland test present mixed questions of law and fact. Sochor v. State, 883 So.2d 766, 771 (Fla.2004). “In reviewing a trial court’s *426 ruling after an evidentiary hearing on an ineffective assistance of counsel claim, this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts.” Mungin v. State, 932 So.2d 986, 998 (Fla.2006).
No party disputes that counsel’s failure to advise a defendant of his or her exposure to an enhanced life sentence under Florida’s HFO sentencing statute during plea negotiations amounts to deficient performance. The issue in this case therefore turns on the second prong of Strickland— prejudice.
We begin by reviewing this Court’s jurisprudence prior to the United States Supreme Court’s recent decisions in Frye and Lafler. Then, we review the Frye and Lafler decisions and their impact on Florida jurisprudence concerning ineffective assistance of counsel claims where a plea is not accepted based on counsel’s misadvice or because of counsel’s failure to convey the plea to the defendant. Finally, we apply the correct law to this case and hold that further proceedings in the trial court are required regarding Alcorn’s prejudice claims. We therefore do not reach the issue of remedy under the unique factual circumstances in this case.
I. This Court’s pre-Frye and Lafler Jurisprudence: Cottle and Morgan
Over a decade before the United States Supreme Court decided Frye and Lafler, this Court in Cottle recognized that counsel’s acts or omissions bearing on a defendant’s decision to reject a plea offer and proceed to trial could establish the basis for a legally sufficient ineffective assistance claim under Strickland. See Cottle, 733 So.2d at 966-67.
In Cottle, this Court held that the Strickland analysis extended to challenges arising out of the plea bargaining process, reasoning that this pretrial process was a critical stage in criminal adjudication that warranted the same constitutional guarantee of effective assistance of counsel as trial proceedings. Cottle, 733 So.2d at 965. This Court in Cottle adopted a modified Strickland analysis to be applied where the basis for an accused’s ineffective assistance claim hinged on counsel’s failure to properly advise him or her about the State’s plea offer, resulting in the accused’s rejection of that offer. See id. at 967, 969. Under the test set forth in Cottle, a prima facie ineffectiveness claim could be established upon a showing by the defendant of the following three elements: (1) counsel failed to convey a plea offer or misinformed the defendant concerning the possible sentence he faced; (2) the defendant would have accepted the plea but for counsel’s failures; and (3) acceptance of the plea would have resulted in a lesser sentence than was ultimately imposed. See id. at 967, 969. The Court expressly rejected the view that a defendant was required to additionally prove that the trial court would have accepted the plea arrangement the State had offered. Id. at 969.
Subsequently, this Court in Morgan reaffirmed the modified three-part Strickland test adopted by the Court in Cottle for claims of ineffective assistance arising out of the plea stage and confirmed that such claims could be based on the advice of counsel to reject a plea offer. See Morgan, 991 So.2d at 839-40.
Therefore, before the United States Supreme Court’s decisions in Frye and La-fler, Florida law extended the Strickland analysis to challenges arising out of the plea process, and in particular, to instances where counsel’s acts or omissions led to a defendant’s non-acceptance of a plea offer. Because Frye and Lafler have plainly al *427 tered the precedent set forth by the Cottle line of cases, we turn to a discussion of those cases next.
II. Frye and Lañer
By its decisions in Frye and Lafler, the United States Supreme Court has now firmly established that plea negotiations are a “critical point” in the course of a criminal proceeding, during which the Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. Frye, 132 S.Ct. at 1407 (recognizing that plea negotiations are a “critical point” in the course of a criminal proceeding where effective assistance of counsel is required); Lafler, 132 S.Ct. at 1384 (holding that a criminal defendant’s Sixth Amendment right to counsel “extends to the plea-bargaining process,” during which he or she is entitled to effective assistance of competent counsel).[3] In reaching the conclusion that Strickland also extended to situations where defendants failed to accept a plea offer and then proceeded to trial as a result of their attorney’s deficient performance, the United States Supreme Court pointed to the contemporary plea bargaining process as a chief component of the administration of the criminal justice system, concluding that “[i]n today’s criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant.” Frye, 132 S.Ct. at 1407-08; see also Lafler, 132 S.Ct. at 1388.
The United States Supreme Court in Frye and Lafler determined the appropriate remedy when alleged deficient performance by counsel led to the defendant’s non-acceptance of a plea offer and further proceedings resulted in a less favorable outcome. In Frye, the defendant asserted that his attorney rendered ineffective assistance in failing to inform him of a plea offer, after which the offer expired. Frye, 132 S.Ct. at 1404. The defendant later pled guilty without a plea agreement and was sentenced to a term of imprisonment longer than what he would have served had he accepted the lapsed plea agreement. Id. at 1404-05. In evaluating the defendant’s claim of ineffective assistance based on the uncommunicated plea offer, the United States Supreme Court applied the two-pronged test of Strickland. Id. at 1404. After concluding that counsel rendered deficient performance, the Court turned to the second prong of the Strickland test and held that “[t]o show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel’s deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel.” Id. at 1409. Noting that a defendant has no right to be offered a plea bargain, however, the Court further held that a defendant must also show that “if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from *428 being accepted or implemented.” Id. at 1410.
In Lafler, the companion case to Frye, the United States Supreme Court again applied Strickland to a claim of ineffective assistance of counsel arising from plea negotiations. There, the defendant rejected a plea offer based on counsel’s misadvice and was later convicted at trial. Lafler, 132 S.Ct. at 1383. Because all parties had conceded before the United States Supreme Court that the defendant’s counsel rendered deficient performance, the Court did not address the first prong of Strickland. Id. at 1384. In applying the second prong, the Court echoed Frye’s holding: “In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.” Id. Specifically, the Court held that where “ineffective advice led not to an offer’s acceptance but to its rejection,” in order to establish prejudice
a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed.
Id. at 1385. The Court concluded that this standard was satisfied under the facts of that case. Id. at 1391. The Court rejected the argument that there can be no finding of prejudice arising from plea bargaining if the defendant is later convicted at a fair trial. See id. at 1385-88.
The United States Supreme Court in Lafler then addressed the appropriate remedy. In Lafler, the Court explained that remedies for Sixth Amendment violations should be “tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.” Id. at 1388 (quoting United States v. Morrison, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). “Thus, a remedy must ‘neutralize the taint’ of a constitutional violation, while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution.” Id. at 1388-89 (quoting Morrison, 449 U.S. at 365, 101 S.Ct. 665).
The United States Supreme Court explained that a defendant who declines a plea offer as a result of ineffective assistance of counsel and then receives a greater sentence at trial, might endure a “specific injury” that comes “in at least one of two forms,” and the remedy should be tailored accordingly. Id. at 1389. The first category involves typical cases where “the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial.” Id. When this occurs, “the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the [State] offered in the plea, the sentence he received at trial, or something in between.” Id.
In the second category, however, resen-tencing based on a conviction at trial alone is insufficient because it does not fully redress the constitutional injury. See id. This situation can arise, for example, where “an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge’s sentencing discretion after trial.” Id. “In these circumstances,” the Court reasoned, “the proper exercise of discre *429 tion to remedy the constitutional injury may be to require the prosecution to reof-fer the plea proposal.” Id. Presuming the defendant accepts the offer, the trial court “can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.” Id.
In Lafler, the defendant rejected the State’s offer to dismiss two of his charges in exchange for a guilty plea. Id. at 1383. The United States Supreme Court held that the “correct remedy” under these facts was not to order specific performance of the original plea agreement, but “to order the State to reoffer the plea agreement” under the second category of available remedies. Id. at 1391. The Court left “open to the trial court how best to exercise that discretion in all the circumstances of the case.” Id.
With respect to the limits circumscribing the trial court’s discretion, the United States Supreme Court expressly declined to set any such limits, instead stating “[pjrinciples elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge’s discretion.” Id. at 1389. The La-fler Court noted two relevant considerations, however: (1) a court may take into account a defendant’s expressed willingness, or unwillingness, to accept responsibility for his or her actions; and (2) while it was not necessary to decide whether a judge is required to disregard any information concerning the crime that was discovered after the plea offer was made, the baseline of the positions the prosecution and defendant occupied prior to the rejection of the plea offer could be consulted. Id.
III. The Impact of Frye and Latter on Florida’s Prejudice Jurisprudence
Frye and Lafler squarely impact Florida’s prejudice-prong jurisprudence. Al-corn urges us to consider that article I, section 16, of the Florida Constitution affords greater right-to-counsel protections than those afforded by the Sixth Amendment.[4] Although Alcorn is correct that in the context of when the right to counsel attaches, this Court has afforded greater rights than those afforded under the United States Constitution, see, e.g., State v. Kelly, 999 So.2d 1029, 1040 (Fla.2008), this Court has never accorded greater rights to a defendant in the context of the prejudice prong of an ineffective assistance of counsel claim. Instead, this Court has consistently based its prejudice jurisprudence in that arena on Strickland and subsequent pronouncements from the United States Supreme Court. This Court in Cottle and Morgan specifically relied on United States Supreme Court precedent and did not base those cases on article I, section 16, of the Florida Constitution. In other words, Cottle and Morgan were based on this Court’s decision as to what Strickland required for ineffective assistance of counsel claims where counsel’s deficient performance leads to the non-acceptance of a plea offer. The United States Supreme Court has since clarified the application of Strickland to such claims.
In Frye and Lafler, the United States Supreme Court held that not only must defendants demonstrate a reasonable probability they would have accepted the plea offer had they been afforded effective assistance of counsel, they “must also dem *430 onstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law.” Frye, 132 S.Ct. at 1409 (emphasis added). In Florida, trial courts and prosecutors have that discretion. This Court’s precedent recognizes that Florida’s trial courts are not bound by any plea agreement. See Rollman v. State, 887 So.2d 1233, 1235 (Fla.2004) (“We continue to agree that a trial court retains the authority to alter a prior plea arrangement up until the time sentence is imposed, so long as the trial court provides the defendant an opportunity to withdraw any plea that was entered in reliance on the promised sentence.”); Goins v. State, 672 So.2d 30, 31 (Fla.1996) (“Even though the plea has been accepted and regardless of whether the judge participated in the negotiations, the judge is never bound to honor the agreement.”). Moreover, Florida Rule of Criminal Procedure 3.172(g) authorizes the prosecutor to withdraw a plea offer at any time before it is formally accepted by the trial judge. See Fla. R.Crim. P. 3.172(g) (“No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, ad-visements, and determinations required by this rule. Until that time, it may be withdrawn by either party without any necessary justification.” (emphasis added)).[5]
Accordingly, the additional requirements imposed by Frye and Lafler apply in Florida. Therefore, under the most recent United States Supreme Court precedent, “[t]o establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.” Frye, 132 S.Ct. at 1409; see also Lafler, 132 S.Ct. at 1384 (“In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice.”). Specifically, to establish prejudice, the defendant must allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the defendant correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer’s terms would have been less severe than under the judgment and sentence that in fact were imposed. See Frye, 132 S.Ct. at 1410.
We therefore recede from the prejudice test set forth in Cottle and Morgan as contrary to the four-prong test set forth in Frye and Lafler in two respects. First, the requirement of showing a reasonable probability that the trial court would have accepted the plea arrangement the State had offered is contrary to the holding in Cottle, 733 So.2d at 969, that a defendant need not show a reasonable probability that the trial court would have accepted the plea offer in order to demonstrate prejudice. Second, the requirement of showing a reasonable probability that the prosecutor would not have prevented the offer from being accepted or implemented was not contained in either Cottle or Morgan.
IV. Resolving the Conflict
In light of this standard, we now briefly review the conflict cases and explain why *431 we disapprove them. In the first certified conflict case, Lewis, 751 So.2d 715, the defendant alleged that counsel rendered ineffective assistance in failing to advise him of the possibility and consequences of an HFO sentence before he rejected the State’s more favorable plea offer. Id. at 715-16. The postconviction court denied the defendant’s postconviction motion, noting, among other things, that even if the defendant had not been advised of the one-year offer, the trial court would not have approved the plea. Id. at 717. The Fifth District reversed, setting forth the three-part Cottle test and stating that it was not necessary for a defendant to additionally establish that a trial court would have accepted the plea agreement offered by the State. Id. The Fifth District concluded that where the maximum exposure of incarceration is not relayed by counsel, the defendant is prejudiced because such information is necessary to make an informed decision. Id. at 717-18. The Fifth District in Lewis reversed for a new trial but encouraged the “good faith resumption of plea negotiations.” Id. at 718.
In the second certified conflict case, Revell, 989 So.2d 751, the Second District primarily relied upon the Fifth District’s reasoning in Lewis to reverse the defendant’s conviction as a result of counsel’s failure to advise the defendant of the possibility and consequences of being sentenced as an HFO before rejecting the State’s more favorable plea offer. Id. at 751-52. Like the defendant in Lewis, the defendant in Revell alleged that he would have accepted the plea had he known his maximum sentence exposure was ten years, not five years as he was incorrectly advised. Id. at 752. The trial court denied the defendant’s postconviction claim, and the Second District reversed. The Second District agreed with the Fifth District in Lewis that in order to make an informed decision, the defendant needed to be made aware of the possible penalties. Id. The Second District cited Lewis and Cottle and, following those cases, did not require a showing that a trial court would have accepted the plea agreement offered by the State. See id. Instead, the Second District held that “[c]ounsel’s failure to accurately advise his client of the maximum sentence he faced when considering the offer of a plea negotiation amounts to ineffective assistance.” Id.
In light of Frye and Lafler, we disapprove the reasoning of the Second and Fifth Districts with respect to the prejudice prong. The United States Supreme Court now has rejected the Cottle principle applied by the Second District in Lewis that a defendant need not establish that the trial court would have accepted the plea agreement offered by the State. See Frye, 132 S.Ct. at 1410; Lafler, 132 S.Ct. at 1385. The Fifth District in Revell cited Cottle and relied on Lewis in finding that prejudice had been established. See Revell, 989 So.2d 751-52. Therefore, Lewis and Revell no longer remain good law with respect to the requirements for showing prejudice.
We further disapprove Lewis and Revell to the extent that those decisions hold that prejudice is presumed where a defendant alleges that he would have accepted the State’s plea offer but for counsel’s misadvice, regardless of any other considerations. A “determination of ‘reasonable probability’ that the [defendant] would have accepted the plea requires consideration of ‘the totality of the evidence.’ ” Wanatee v. Ault, 39 F.Supp.2d 1164, 1175 (N.D.Iowa 1999) (quoting McCauley-Bey v. Delo, 97 F.3d 1104, 1105 (8th Cir.1996)). No single piece of evidence will absolutely mandate or foreclose a finding of prejudice under any and every scenario. For example, courts are entitled *432 to accept the defendant’s undisputed, yet self-serving, allegation that he would have taken the plea offer but for being misad-vised on the proper statutory maximum as a basis for finding prejudice, but courts are not precluded from rejecting such a statement either.
We conclude that the Fourth District in Alcorn also employed an incorrect prejudice analysis. In the plea context, a defendant establishes Strickland prejudice when he shows, among other things, a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that he would have accepted the offer had counsel performed effectively (i.e., had given the correct advice). See Frye, 132 S.Ct. at 1410; Lafler, 132 S.Ct. at 1385. Prejudice therefore is determined based upon a consideration of the circumstances as viewed at the time of the offer and what would have been done with proper and adequate advice.
The Fourth District’s prejudice analysis improperly shifted the focus to what transpired after Alcorn rejected the plea based on inaccurate advice. Although superficially appealing, the fact that Alcorn happened to receive the same sentence as the one about which he was incorrectly advised (thirty years) simply has no bearing on the prejudice inquiry. The Fourth District instead should have analyzed whether there was a reasonable probability that Alcorn would have chosen to accept the plea had he been correctly advised. That is, in assessing prejudice, the district court was required by precedent — even prior to Frye and Lafler — to determine whether Alcorn would have accepted the State’s twelve-year plea if counsel had correctly informed him that he faced a potential life sentence under the HFO statute, not a thirty-year sentence. As explained above, the prejudice inquiry under Frye and Lafler is now whether the defendant has shown a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time, see Frye, 132 S.Ct. at 1409; Lafler, 132 S.Ct. at 1384, not whether he received the same sentence as what he was incorrectly advised.
V. Application of the Correct Law to the Facts of This Case
Having set forth the correct prejudice standard, we now apply that standard to the facts of this case. The relevant facts are straightforward. Testimony at the ev-identiary hearing was undisputed that both defense counsel and the prosecutor erroneously concluded that Alcorn did not qualify as an HFO when Alcorn was presented with the State’s twelve-year plea offer. As a result, when rejecting the plea offer, Alcorn was never advised that his first-degree felony charge for sale of cocaine within 1,000 feet of a church carried a statutory maximum life sentence under the HFO statute. Instead, counsel only made Alcorn aware of the thirty-year sentence that charge carried absent the HFO enhancer. The plea was not accepted, and Alcorn proceeded to trial.
At trial, the State was unable to prove that the sale occurred within 1,000 feet of a church and agreed to reduce the charge to the second-degree felony of simple sale of cocaine, which carried a statutory fifteen-year sentence. The jury convicted Alcorn for that offense, the State sought an HFO enhancement, and the trial court sentenced Alcorn to thirty years’ imprisonment as an HFO. During postconviction proceedings, Alcorn raised two claims: (1) that he was not advised of the twelve-year plea offer; and (2) that he was not advised of the maximum sentence he faced at the time of the plea offer. He alleged that had *433 he been properly advised, he would have accepted the State’s twelve-year plea offer.
The trial court only ruled upon Alcorn’s allegation that counsel failed to convey the plea offer to him. The trial court found that counsel in fact conveyed the offer, that Alcorn was not satisfied with its terms, and that he rejected it to take his chances at trial. However, the trial court never ruled, and thus did not make any factual findings, on Alcorn’s claim that he would have accepted the State’s twelve-year plea offer had he been accurately informed of the correct statutory maximum sentence — life in prison and not thirty years’ imprisonment.
Because the issue of whether Alcorn can establish prejudice remains unresolved at this juncture, we do not reach the issue of the appropriate remedy in this case because it would be premature to do so. We recognize that this case may present a unique factual scenario because the plea offer was based on a mutual mistake that Alcorn did not qualify as an HFO and because Alcorn was convicted of a lesser offense at trial.
CONCLUSION
For the foregoing reasons, we recede from Cottle and Morgan regarding the requirements for demonstrating prejudice for claims of ineffective assistance of counsel when a defendant does not accept a plea offer and instead proceeds to trial. We also disapprove Lewis and Revell, and we quash the Fourth District’s decision below.
Because the trial court did not make any findings on Alcorn’s claim based on counsel’s misadviee regarding Alcorn’s statutory maximum penalty as an HFO, we direct the Fourth District to remand this case to the trial court to allow that court to fully address and resolve this claim. On remand, the trial court should apply the modified four-part Strickland test as set forth in Frye and Lafler. Beginning with the last prong first, Alcorn’s sentence under the terms of the offer (twelve years) irrefutably was less severe than the sentence imposed (thirty years). Therefore, the remaining issues to be resolved by the trial court are whether Alcorn has proven a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he would have accepted the offer had counsel advised him of the correct statutory maximum sentence, (2) the prosecutor would not have withdrawn the offer, and (3) the court would have accepted the offer’s terms. See Frye, 182 S.Ct. at 1410; Lafler, 132 S.Ct. at 1385.[6]
It is so ordered.
POLSTON, C.J., and LEWIS, QUINCE, CANADY, LABARGA and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

. Because Frye and Lafler were issued after briefing was completed in this case, we ordered supplemental briefing and scheduled oral argument to allow the parties to present arguments regarding the impact of these cases.

. Although the right to effective assistance of counsel previously had been applied to plea bargains, the Supreme Court’s earlier cases involved defendants who had accepted the offer and pleaded guilty as a result of an attorney’s deficient performance. See Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (holding that a guilty plea, based on a plea offer, should be set aside because counsel misinformed the defendant of the immigration consequences of the conviction); Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (addressing a claim by a defendant who had entered a guilty plea that his counsel had misinformed him of the amount of time he would have to serve before becoming eligible for parole).

. Specifically, Alcorn made this argument in the context of requesting that this Court grant a different remedy than that provided by the United States Supreme Court in Lafler. As we explain below, we do not reach the issue of remedy in this case and therefore do not reach Alcorn’s specific argument on that point.

. At the time of Alcorn’s pretrial plea negotiations, Florida Rule of Criminal Procedure 3.172(g) was classified as Florida Rule of Criminal Procedure 3.172(f). The language found in both provisions is identical.

. The State argued in its brief in this Court that the fair trial Alcorn received cured any ineffectiveness. This argument has since been squarely rejected by the United States Supreme Court. See Lafler, 132 S.Ct. at 1385-88.